**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LOLA RUSSELL, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>SHEIN DISTRIBUTION CORPORATION, a Delaware corporation; SHEIN US SERVICES, LLC, a Delaware limited liability company; and SHEIN TECHNOLOGY LLC, a Delaware limited liability company,<br><br>Defendants. | Case No. 1:26-cv-04533<br><br>The Honorable Joan H. Lefkow |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
<u>MOTION TO COMPEL ARBITRATION AND STAY THE CASE</u>**

Robert A. Chapman
Shannon T. Knight
**CHAPMAN SPINGOLA, LLP**
190 South LaSalle Street, Suite 3850
Chicago, Illinois 60603
312-606-8651
rchapman@chapmanspingola.com
sknight@chapmanspingola.com
lcross@chapmanspingola.com

Jason J. Kim (admitted pro hac vice)
Carlos A. Nevarez (admitted pro hac vice)
**HUNTON ANDREWS KURTH LLP**
550 S. Hope Street, Suite 2000
Los Angeles, California 90071
(213) 532-1000
kimj@Hunton.com
cnevarez@Hunton.com

Jamie Zysk Isani (admitted pro hac vice)
**HUNTON ANDREWS KURTH LLP**
333 SE 2nd Avenue
Miami, Florida 33131
(305) 536-2724
jisani@Hunton.com

*Attorneys for Defendants SHEIN Distribution Corporation,
SHEIN US Services, LLC, and SHEIN Technology LLC*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................... 3

    A.   Plaintiff Repeatedly Agreed to the Terms When She Created and Signed in to Her Accounts and Made Online Purchases ................................................................................ 3

    B.   SHEIN's Terms Contain an Arbitration Provision................................................................ 7

ARGUMENT ................................................................................................................................ 9

    I.   PLAINTIFF'S CLAIMS ARE SUBJECT TO MANDATORY ARBITRATION ON AN INDIVIDUAL BASIS ............................................................................................. 9

        C.   The Parties Agreed to Arbitrate Arbitrability ............................................................. 10

        D.   The Dispute Falls Within the Arbitration Provision.................................................... 12

        E.   Plaintiff Refused to Arbitrate by Initiating This Case in Illinois State Court ............ 13

    II.   PLAINTIFF'S CLASS CLAIMS CANNOT PROCEED. ................................................. 14

    III.  THE CASE SHOULD BE STAYED PENDING ARBITRATION. ................................... 15

CONCLUSION............................................................................................................................. 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acaley v. Vimeo, Inc.*,
464 F. Supp. 3d 959 (N.D. Ill. 2020) .......................................................................12

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)....................................................................................................15

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)..................................................................................................9, 15

*Cater v. MyHeritage*,
2026 WL 851264 (N.D. Ill. Mar. 27, 2026)...................................................9, 10, 14

*Craddock v. Beats Music, LLC*,
2015 WL 4960041 (N.D. Ill. Aug. 19, 2015) .......................................................13

*Dean Witter Reynolds Inc. v. Byrd*,
470 U.S. 213 (1985)......................................................................................................9

*DIRECTV, Inc. v. Imburgia*,
577 U.S. 47 (2015).....................................................................................................15

*Domer v. Menard, Inc.*,
116 F.4th 686 (7th Cir. 2024) ...............................................................................11, 12

*Gorny v. Wayfair, Inc.*,
2019 WL 2409595 (N.D. Ill. June 7, 2019)..........................................................12, 13

*Henry Schein Inc. v. Archer & White Sales Inc.*,
139 S. Ct. 524 (2019).................................................................................................10

*Johnson v. Uber Techs., Inc.*,
2018 WL 4503938 (N.D. Ill. Sept. 20, 2018) .......................................................12

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*,
174 F.3d 907 (7th Cir. 1999) ...................................................................................13

*L.A. v. Take-Two Interactive Software, Inc.*,
2022 WL 22909765 (N.D. Ill. Oct. 3, 2022).........................................................11

*Lathan v. Uber Techs., Inc.*,
266 F. Supp. 3d 1170 (E.D. Wis. 2017)..................................................................10

ii

*Learning Resources, Inc. v. Trump*,
146 S. Ct. 628 (2026) ...................................................................................................1

*Miracle-Pond v. Shutterfly, Inc.*,
2020 WL 2513099 (N.D. Ill. May 15, 2020) ............................................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .........................................................................................................9

*Ramirez v. SHEIN US Servs., LLC*,
2024 U.S. Dist. LEXIS 147629 (S.D. Fla. Aug. 19, 2024) .......................................12

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010) .....................................................................................................10

*Rose v. Mercedes-Benz USA, LLC*,
167 F.4th 975 (7th Cir. 2026) ....................................................................................11

*Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*,
553 F. Supp. 3d 452 (N.D. Ill. 2021) .........................................................................11

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ..............................................................................................14, 15

*Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*,
559 U.S. 662 (2010) ...................................................................................................14

*Zurich Am. Ins. v. Watts Indus., Inc.*,
466 F.3d 577 (7th Cir. 2006) ........................................................................................9

**Statutes**

9 U.S.C. § 1 et seq............................................................................................. *passim*

Illinois Consumer Fraud and Deceptive Business Practices Act ................................1, 2

International Emergency Economic Powers Act ...............................................................1

**Other Authorities**

Rule 8(b) ......................................................................................................................11

Rule 11(b) .....................................................................................................................11

iii

**INTRODUCTION**

Plaintiff Lola Russell filed this putative class action against SHEIN US Services, LLC, SHEIN Distribution Corporation, and SHEIN Technology LLC (collectively, "SHEIN"), alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), as well as claims for unjust enrichment and money had and received. Plaintiff seeks to recover some portion of the purchase price she paid for goods she willingly purchased from SHEIN, because she asserts that SHEIN passed along the cost of tariffs it was forced to pay, which were later determined to be unconstitutional. Plaintiff's claims fail as a matter of law, but more fundamentally, they do not belong in this Court. Plaintiff must individually arbitrate her claims in accordance with the binding arbitration and class-action waiver within SHEIN's Terms of Use, to which Plaintiff agreed on numerous occasions. That arbitration agreement delegates to the arbitrator any questions of arbitrability, validity, or enforceability. This Court therefore should compel Plaintiff to individual arbitration.

SHEIN is an online fashion and lifestyle retailer. Plaintiff is a customer who has purchased numerous household items from SHEIN over the past four years. SHEIN, like many other companies that import goods into the United States, was forced to pay a changing array of tariffs imposed by Executive Orders issued under the International Emergency Economic Powers Act ("IEEPA") beginning in February 2025, until those tariffs were ruled unlawful by the U.S. Supreme Court in February 2026. *See Learning Resources, Inc. v. Trump*, 146 S. Ct. 628 (2026). The Supreme Court decision set up the possibility that importers who had been required to pay the tariffs would be entitled to refunds of the unlawful tariffs.

Plaintiff filed a putative class action Complaint in Illinois state court on March 17, 2026 (the "Complaint"). Dkt. 1-1, pp. 5–24. SHEIN removed the action to this Court on April 22, 2026. Dkt. 1. The Complaint acknowledges that SHEIN had not actually received any refund—or even

1

indicated whether it intended to seek refunds—when Plaintiff filed suit. Dkt. 1-1, p. 7, ¶ 11. Undeterred, Plaintiff claims that she is entitled to recover some portion of the purchase price she paid because SHEIN might possibly obtain refunds of the unlawful tariffs it was required to pay in order to import and deliver the goods that Plaintiff sought to enjoy. Plaintiff asserts claims under the ICFA, as well as claims for unjust enrichment and money had and received. *Id.* p. 5, ¶ 1.

Plaintiff's ICFA claim is premised on the notion that, while the tariffs were in effect, SHEIN should have disclosed to customers at the point of sale the speculative possibility that the tariffs might later be invalidated. That claim fails for multiple reasons, including (a) it ignores the fact that SHEIN had no choice but to pay the tariffs to deliver the products that Plaintiff sought to purchase; (b) SHEIN never promised that a certain portion of any purchase price would be earmarked toward tariff charges; and (c) the Supreme Court's decision was by no means certain (indeed, the issue was litigated up to the nation's highest Court, which issued a 6-3 split decision). Plaintiff further ignores the economic reality that prices change for a variety of reasons, including to cover increased operating expenses and a myriad of other ever-changing factors, and customers faced with higher prices are free to choose whether to pay the retailer's price or shop elsewhere. There is no legal basis for a customer to recover a portion of a price increase charged by a retailer to cover increasing operating expenses. If this litigation were to proceed on the merits, SHEIN would have strong defenses to Plaintiff's claims.

But the Court need not and should not resolve those issues because Plaintiff's Complaint ignores a critical threshold issue: Plaintiff's agreement to arbitrate this dispute. SHEIN's online terms of use (the "Terms") require complainants to arbitrate—on an individual basis—the very claims Plaintiff asserts here. Plaintiff agreed to those Terms on multiple occasions—including when she created and signed into her multiple SHEIN accounts and when she made hundreds of

2

purchases through SHEIN's mobile application and web browser. As demonstrated below, the parties agreed to arbitrate any disputes regarding arbitrability. Plaintiff has violated that agreement by refusing to arbitrate, filing this lawsuit in court, and contesting this motion. The Court should compel arbitration on an individual basis—just as Plaintiff agreed.

## FACTUAL BACKGROUND

### A. Plaintiff Repeatedly Agreed to the Terms When She Created and Signed in to Her Accounts and Made Online Purchases

Over the course of a three-and-a-half year period, Plaintiff opened three online accounts with SHEIN, through which she purchased over 400 items on at least 18 separate occasions, beginning in June 2022 and continuing until the day she filed this lawsuit, on March 17, 2026. *See* Declaration of Danny Chi ("Chi Decl."), **Exhibit 1** hereto.

SHEIN's Terms are publicly available on its website and mobile application. Chi Decl. ¶ 4. In addition, when SHEIN updated its Terms, Plaintiff would have received an email notifying her of the update. *Id.* ¶ 4 & **Exhibit B**. Plaintiff repeatedly received notice of, and agreed to, SHEIN's Terms on multiple occasions throughout the course of her long purchase history, as shown by SHEIN's records. *Id.* ¶¶ 4-13.

For example, when Plaintiff initially registered for each of her three accounts with SHEIN, she "[a]greed to the Privacy & Cookie Policy and the Terms & Conditions":

3

**New To SHEIN**

You are now registering into United States , please switch Location in the Settings if you want to ship other Location

Location: United States ▾

Email Address:

Password:

Confirm Password:

Style Preference

☐ Women          ☐ Men

☐ Plus Size      ☐ Kids

☐ Home           ☐ Pets Supplies

☐ I agree to the Privacy & Cookie Policy and Terms & Conditions.

**REGISTER**

*Id.* ¶ 7.  As shown above, in order to register for an account, Plaintiff had to affirmatively click on the box indicating she agreed to the Terms before clicking on the "REGISTER" button to complete her account registration.  *See id.*  SHEIN's records reflect that Plaintiff clicked on those buttons to create each of her three accounts.  *Id.* ¶ 8.

Plaintiff made numerous purchases through her three accounts and accepted SHEIN's Terms each time she did so.  As one example, when Plaintiff made a purchase through SHEIN's mobile application on June 6, 2024, she "agree[d] to SHEIN's Terms and Conditions and Privacy Policy":

4



*Id.* ¶ 10.  As shown above, Plaintiff could not place an order from SHEIN without clicking the "CONTINUE" button.  *Id.*  Immediately above the "CONTINUE" button is a clear disclosure: "By placing this order you agree to SHEIN's Terms and Conditions and Privacy Policy."  *Id.*  The "Terms and Conditions" and "Privacy Policy" are prominently displayed, with hyperlinks set off in blue font that could be viewed with one click.  *Id.* ¶ 11.

Plaintiff also received notice of and agreed to SHEIN's "Terms & Conditions" when she signed into her account on her mobile device, for example on April 27, 2023:

5



*Id.* ¶ 12.  SHEIN's records reflect that Plaintiff accepted the updated Terms on April 27, 2023.  *Id.* ¶¶ 12-13.

And, again, when Plaintiff signed into her account on her mobile device before making a purchase, such as the one she made on June 6, 2024, she received notice of SHEIN's Terms:



6

*Id.* ¶ 9. As shown above, Plaintiff could not sign into her SHEIN account without clicking a "CONTINUE" button. *Id.* And she was told, below that "CONTINUE" button, that "[b]y continuing, you agree to our Privacy & Cookie Policy and Terms & Conditions." *Id.* The Terms were prominently displayed as a blue hyperlink and could be viewed with one click. *Id.* ¶ 9.

**B.    SHEIN's Terms Contain an Arbitration Provision.**

SHEIN's Terms govern the use of its website, mobile site, and mobile applications. *See* Chi Decl. at **Exhibit A** (Terms), p. 1.[1] By using SHEIN's services, a user agrees to its Terms, which include a prominent notice, above the table of contents, that all disputes between the user and SHEIN "**SHALL BE RESOLVED BY BINDING AND FINAL ARBITRATION. IT ALSO CONTAINS A CLASS ACTION AND JURY TRIAL WAIVER.**" *Id.* Users are afforded a 30-day period to opt out of arbitration. *Id.* If, a user does not opt out, she "**WILL ONLY BE PERMITTED TO PURSUE DISPUTES OR CLAIMS AND SEEK RELIEF AGAINST [SHEIN] ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING.**" *Id.* SHEIN users further agree to "**WAIVE YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR CLASS-WIDE ARBITRATION.**" *Id.*

The Arbitration Agreement is in a conspicuous section entitled "**LEGAL DISPUTES AND ARBITRATION AGREEMENT FOR USERS IN THE UNITED STATES.**" That section states in relevant part that:

> **13.1 Applicability of Arbitration Agreement.** Subject to the terms of this Arbitration Agreement, you and SHEIN agree that any dispute, claim, disagreement

---

[1] The Arbitration Agreement and class-action waiver provisions quoted above have not changed from the time Plaintiff made a purchase in June 2024 through the date this lawsuit was filed. *Compare* Chi Decl. at **Exhibit A**, p. 1 & § 13, *with* Chi Decl. at **Exhibit F**, p. 1 & § 13. Throughout that time, the Terms have referred to SHEIN as SHEIN US Services, LLC and its affiliates, which include Defendants SHEIN Distribution Corporation and SHEIN Technology Services LLC. *See* Chi Decl. ¶ 14; Chi Decl. at **Exhibit A**, § 1.1; Chi Decl. at **Exhibit F**, § 1.1.

7

arising out of or relating in any way to your access to or use of the Site, App, Services or the Agreement and prior versions of the Agreement, including claims and disputes that arose between us before the effective date of this Agreement (each a **"Dispute"** ), will be resolved by binding arbitration, rather than in court . . . .

**13.2 Waiver of Jury Trial.** YOU AND SHEIN HEREBY WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO SUE IN COURT AND HAVE A TRIAL IN FRONT OF A JUDGE OR A JURY. You and SHEIN are instead electing that all Disputes shall be resolved by arbitration under this Arbitration Agreement, except as specified in the paragraph entitled "Applicability of Arbitration Agreement" above. There is no judge or jury in arbitration, and court review of an arbitration award is subject to very limited review. Discovery may be limited in arbitration, and procedures are more streamlined than in court.

Terms §§ 13.1, 13.2. The Arbitration Agreement further contains a clear and conspicuous class-action waiver, prominently set out in all-caps:

**13.3 Class Action Waiver.** YOU AND SHEIN AGREE THAT, EXCEPT AS SPECIFIED IN THE PARAGRAPH ENTITLED "BATCH ARBITRATION" BELOW, EACH OF US MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS AND NOT ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS, AND THE PARTIES HEREBY WAIVE ALL RIGHTS TO HAVE ANY DISPUTE BE BROUGHT, HEARD, ADMINISTERED, RESOLVED, OR ARBITRATED ON A CLASS, COLLECTIVE, REPRESENTATIVE, OR MASS ACTION BASIS. ONLY INDIVIDUAL RELIEF IS AVAILABLE, AND DISPUTES OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER.

Terms § 13.3. The Arbitration Agreement also clarifies that the FAA applies and requires that any such arbitration be conducted under the JAMS Arbitration Rules and Procedures:

**13.5 Arbitration Procedures.** You and SHEIN agree that this Arbitration Agreement affects interstate commerce and that the Federal Arbitration Act, 9 U.S.C. § 1 et seq., applies. . . . The arbitration will be conducted by JAMS. Disputes involving claims, counterclaims, or requests for relief under $250,000, not inclusive of attorneys' fees and interest, shall be subject to JAMS's most current version of the Streamlined Arbitration Rules and procedures available at http://www.jamsadr.com/rules-streamlined-arbitration/; all other Disputes shall be subject to JAMS's most current version of the Comprehensive Arbitration Rules and Procedures, available at http://www.jamsadr.com/rules-comprehensive-arbitration/.

Terms § 13.5. The Arbitration Agreement further provides that "[t]he arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement." Terms § 13.8.

## ARGUMENT

### I.     PLAINTIFF'S CLAIMS ARE SUBJECT TO MANDATORY ARBITRATION ON AN INDIVIDUAL BASIS

The FAA reflects a liberal federal policy favoring arbitration, and it requires courts to strictly enforce arbitration agreements.[2] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("[C]ourts must place arbitration agreements on an equal footing with other contracts."). The Supreme Court mandates that federal courts are required to "rigorously enforce agreements to arbitrate," *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985), and "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

"To compel arbitration, a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich Am. Ins. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). "Once a court is satisfied parties agreed to arbitrate, it must compel arbitration." *Cater v. MyHeritage*, 2026 WL 851264, at *2 (N.D. Ill. Mar. 27, 2026) (Lefkow, J.). Each of those elements is satisfied here.

---

[2] It is beyond dispute that the FAA, which governs arbitration agreements in contracts involving interstate commerce, 9 U.S.C. §§ 1-2, applies here. The Terms themselves state that the agreement to arbitrate is governed by the FAA (Chi Decl. at **Exhibit A**, § 13.5), and the transactions at issue unquestionably involve interstate commerce. Plaintiff alleges she is an Illinois resident (Dkt. 1-1, p. 9, ¶ 17), the SHEIN entities are Delaware companies with their principal places of business in California (*id.* ¶¶ 18-20), and Plaintiff's claims seek to recoup price increases allegedly charged as a result of tariffs imposed when goods were imported into the United States.

9

### C.    The Parties Agreed to Arbitrate Arbitrability

The Court's role is limited to determining whether the parties agreed to arbitrate arbitrability. The FAA requires courts to compel arbitration "in accordance with the terms of the agreement." 9 U.S.C. § 4. Thus, when parties "clearly and unmistakably" agree to have an arbitrator decide arbitrability, those issues must be referred to the arbitrator. *Henry Schein Inc. v. Archer & White Sales Inc.*, 139 S. Ct. 524, 529 (2019); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."). Here, the Terms to which Plaintiff repeatedly assented contain an express delegation clause and also incorporate arbitration rules that independently delegate arbitrability. Thus, the Court must refer all arbitrability issues to the arbitrator.

*First*, the delegation clause explicitly delegates gateway issues of arbitrability to the arbitrator. Section 13.8 of the Arbitration Agreement provides that "[t]he arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope or validity of the Arbitration Agreement." Chi Decl. at **Exhibit A** (the Terms), § 13.8. *See, e.g.*, *Cater*, 2026 WL 851264, at *8 (citing *Lathan* v. *Uber Techs., Inc.*, 266 F. Supp. 3d 1170, 1173 (E.D. Wis. 2017)).

In addition to the express delegation provision, the Arbitration Agreement also incorporates the JAMS Arbitration Rules, which independently delegate arbitrability. Section 13.5 of the parties' Arbitration Agreement expressly provides that arbitration "will be conducted by JAMS" and governed by the applicable JAMS rules. Chi Decl. at **Exhibit A**, § 13.5. Under JAMS rules, "arbitrability disputes, including disputes over the formation, existence, validity,

10

interpretation or scope of the agreement under which Arbitration is sought," must be decided by the arbitrator.[3] Incorporation of rules granting the arbitrator authority over arbitrability constitutes clear and unmistakable delegation. *See Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 458 (N.D. Ill. 2021) (incorporation of JAMS rules "clearly and unmistakably" delegates arbitrability by incorporating JAMS rules); *L.A. v. Take-Two Interactive Software, Inc.*, 2022 WL 22909765, at *3 (N.D. Ill. Oct. 3, 2022) (same).

*Second*, Plaintiff assented to arbitration by accepting the Terms on numerous occasions. Whether an online user assented to terms is governed by ordinary state-law principles of contract formation. *Rose v. Mercedes-Benz USA, LLC*, 167 F.4th 975, 978 (7th Cir. 2026) (citing *Domer v. Menard, Inc.*, 116 F.4th 686, 694 (7th Cir. 2024)).[4] An objective approach applies to determine whether parties have mutually agreed to the formation of an agreement. *Id.* In the context of a sale, courts consider whether a seller has "adequately communicate[d] all the terms and conditions of the agreement, and whether the circumstances support the assumption that the purchaser receive[d] reasonable notice of those terms." *Id.* (citation omitted). In other words, the court asks whether "a reasonable person in [the purchaser's] shoes would have realized that he was assenting to the terms of the contract." *Id.* (citation omitted).

Courts in this circuit routinely enforce online agreements where a user is presented with a "clear and conspicuous statement" that proceeding requires agreement to the terms, because "a reasonable user who completes that process would understand that she was manifesting assent." *Miracle-Pond v. Shutterfly, Inc.*, 2020 WL 2513099, at *4 (N.D. Ill. May 15, 2020) (consumer

---

[3] JAMS assigns arbitrability to the arbitrator under both Rule 8(b) of the Streamlined Rules and Rule 11(b) of the Comprehensive Rules.

[4] As the Seventh Circuit acknowledged in *Domer*, the determination of whether a contract was formed over the internet "calls for the application of general rules of contract formation, so the choice of law is not likely to affect the outcome." 116 F.4th at 694.

11

bound by online terms after clicking "Accept" button, where terms were hyperlinked above button); *see also Domer*, 116 F.4th at *700 (affirming order compelling arbitration where retail customer accepted online terms of sale that were hyperlinked in green under order summary box, on opposite side of webpage from, rather than directly above or below, "Submit Order" button); *Acaley v. Vimeo, Inc.*, 464 F. Supp. 3d 959, *963 (N.D. Ill. 2020) (enforcing terms that were hyperlinked below "Create account" button through text, "By starting you agree to our terms and privacy policy"); *Gorny v. Wayfair, Inc.*, 2019 WL 2409595, at *1 (N.D. Ill. June 07, 2019) (enforcing arbitration agreement in Terms of Use linked below "Place Your Order" button); *Johnson v. Uber Techs., Inc.*, 2018 WL 4503938, at *4 (N.D. Ill. Sept. 20, 2018) (enforcing arbitration agreement in Terms of Service that were hyperlinked during account creation process).

SHEIN need only show Plaintiff assented to the Terms on one occasion. And here, Plaintiff did so multiple times and in multiple ways. As proven through the Chi Declaration, Plaintiff assented to the Terms when she created her three accounts, when she expressly accepted SHEIN's updated Terms, when she signed into her accounts, and when she completed purchases. SHEIN has amply met its burden to prove Plaintiff's assent to SHEIN's Terms (including the arbitration provision therein), and Plaintiff cannot possibly overcome any—much less all—of them. SHEIN's Terms have been enforced—and arbitration compelled—on a record involving even fewer online interactions by a SHEIN customer. *See*, *e.g.*, *Ramirez v. SHEIN US Servs., LLC*, 2024 U.S. Dist. LEXIS 147629 (S.D. Fla. Aug. 19, 2024) (enforcing arbitration provision in SHEIN's Terms against customer and compelling arbitration). The facts presented here compel the same result.

### D. The Dispute Falls Within the Arbitration Provision

The second element required to compel arbitration is that the dispute in question falls within the scope of the arbitration provision, *i.e.*, the dispute is arbitrable. Here, the parties agreed

12

to delegate threshold issues regarding arbitrability to the arbitrator, as set forth above.  Thus, any dispute regarding arbitrability is itself subject to arbitration.

Although this Court should not reach the question of whether the Plaintiff's underlying claims are arbitrable, even if the Court were to consider that issue, Plaintiff's claims fall squarely within the scope of the arbitration agreement.  Section 13.1 provides that arbitration applies to "any dispute, claim, [or] disagreement arising out of or relating in any way to your access to or use of the Site, App, Services, or the Agreement and prior versions of the Agreement."  Chi Decl. at **Exhibit A**, § 13.1.  The Seventh Circuit interprets arbitration clauses using "arising out of" or "relating to" language as "extremely broad and capable of an expansive reach."  *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999); *see also Craddock v. Beats Music, LLC*, 2015 WL 4960041, at *3-4 (N.D. Ill. Aug. 19, 2015) ("[L]anguage such as 'arising out of,' 'arising from,' and 'related to' is extremely broad and creates a presumption of arbitrability."); *Gorny*, 2019 WL 2409595, at *4 ("[T]he 'use' of a retail website like Wayfair.com typically involves purchasing products.  A dispute related to the purchase of goods through Wayfair.com necessarily implicates this buyer-seller relationship and thus unambiguously arises out of the website's terms of use and/or a relationship governed by them").

Plaintiff's claims—alleging that SHEIN collected and retained tariff-related charges through prices displayed on its website and mobile app—plainly "relate to" her use of SHEIN's online services and the purchases governed by the Terms.  Plaintiff's claims fall squarely within the scope of the arbitration agreement.

### E.     Plaintiff Refused to Arbitrate by Initiating This Case in Illinois State Court

The final requirement for compelling arbitration is easily met: Plaintiff has refused to arbitrate.  Despite repeatedly agreeing to arbitrate, Plaintiff filed in state court rather than initiating arbitration and now contests arbitration here.  That conduct constitutes refusal under both Seventh

13

Circuit precedent and this Court's own decisions. *See Cater*, 2026 WL 851264, at *8 (a party "shows a refusal to arbitrate" when it files suit in court and contests its arbitration obligation in response to a motion to compel); *Zurich Am. Ins. Co.*, 417 F.3d at 691 (refusal exists where a litigant "disclaimed its duty to arbitrate in a court proceeding."). Because Plaintiff has refused to arbitrate, the FAA requires the Court to enforce the arbitration agreement, compel arbitration, and stay this action. *See* 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 500 (2024).

## II.     PLAINTIFF'S CLASS CLAIMS CANNOT PROCEED.

The Court should dismiss Plaintiff's class claims and order to the parties to arbitrate solely on an individual basis. Arbitration "is a matter of consent," and the FAA prohibits compelling a party to participate in class arbitration absent a contractual agreement to do so. *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 664, 684 (2010). Parties "may specify with whom they choose to arbitrate their disputes," and courts may not impose class procedures where the agreement does not authorize them. *Id.* at 683.

Here, SHEIN did not agree to arbitrate on a class basis. Rather, the Arbitration Agreement expressly prohibits class claims. The introduction of the Terms clearly and conspicuously notifies users: "**UNLESS YOU OPT OUT OF THE AGREEMENT TO ARBITRATE WITHIN 30 DAYS: (1) YOU WILL ONLY BE PERMITTED TO PURSUE DISPUTES OR CLAIMS AND SEEK RELIEF AGAINST US ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING AND YOU WAIVE YOUR RIGHT TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR CLASS-WIDE ARBITRATION**." Chi Decl. at **Exhibit A**, Intro. And, in Section 13.3, the parties agreed: "EACH OF US MAY BRING CLAIMS AGAINST THE OTHER ONLY ON AN INDIVIDUAL BASIS . . . DISPUTES OF MORE THAN ONE

14

CUSTOMER OR USER CANNOT BE ARBITRATED OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER. *Id.* § 13.

The Supreme Court has repeatedly held that such waivers are fully enforceable under the FAA. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011) (FAA preempts state rules invalidating class-action waivers); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233–39 (2013) (courts may not invalidate arbitration agreements because they require individual arbitration); *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 58 (2015) (FAA "pre-empts and invalidates" state law disfavoring class-action waivers). Under this binding precedent, Plaintiff cannot proceed with class claims in any forum—neither in court nor in arbitration.

## III. THE CASE SHOULD BE STAYED PENDING ARBITRATION.

The FAA mandates that a district court "shall" stay judicial proceedings when a dispute is subject to arbitration and a party requests a stay. 9 U.S.C. § 3. The Supreme Court has affirmed that this command is mandatory: "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party has requested a stay of the court proceeding pending arbitration, § 3 of the FAA compels the court to issue a stay." *Smith*, 601 U.S. 472, 478-79 (cleaned up). Accordingly, the Court should stay the lawsuit pending arbitration.

### CONCLUSION

For the foregoing reasons, the Court should compel arbitration on an individual basis and stay this case during the pendency of the arbitration.

Dated: May 22, 2026

Respectfully submitted,

By: */s/* Shannon T. Knight

Robert A. Chapman
Shannon T. Knight
**CHAPMAN SPINGOLA, LLP**
190 South LaSalle Street, Suite 3850
Chicago, Illinois 60603

15

312-606-8651
rchapman@chapmanspingola.com
sknight@chapmanspingola.com

Jason J. Kim*
Carlos A. Nevarez*
**HUNTON ANDREWS KURTH LLP**
550 S. Hope Street, Suite 2000
Los Angeles, California 90071
(213) 532-1000
kimj@Hunton.com
cnevarez@Hunton.com

Jamie Zysk Isani*
**HUNTON ANDREWS KURTH LLP**
333 SE 2nd Avenue
Miami, Florida 33131
(305) 536-2724
jisani@Hunton.com

Attorneys for Defendants
SHEIN Distribution Corporation,
SHEIN US Services, LLC, and
SHEIN Technology LLC

*Admitted pro hac vice*

16