**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| LOLA RUSSELL, individually and on behalf of similarly situated individuals, | ) ) ) | Case No. 1:26-cv-4533 |
| *Plaintiff,* | ) ) | |
| v. | ) ) | District Judge Joan Humphrey Lefkow |
| SHEIN DISTRIBUTION CORPORATION, a Delaware corporation; SHEIN US SERVICES, LLC, a Delaware limited liability company; and SHEIN TECHNOLOGY LLC, a Delaware limited liability company, | ) ) ) ) ) ) ) | |
| *Defendants.* | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

Dated: July 15, 2026

Myles McGuire
Evan M. Meyers
Joseph Dunklin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
jdunklin@mcgpc.com

*Attorneys for Plaintiff and the
Putative Class*

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ...................................................................................................2

III.    LEGAL STANDARD ...........................................................................................5

IV.     ARGUMENT ........................................................................................................5

   A.   **Defendant's Motion to Compel Arbitration Should be Denied** ........................8

        i.    Defendant fails to establish that Plaintiff assented to its Terms and
              Conditions when creating her SHEIN account.  ........................................8

   B.   **The Tariff Disputes That SHEIN Attempts To Send To Arbitration Are Not
        Arbitrable** .......................................................................................................10

        i.    Illinois substantive-unconscionability doctrine supplies the rule of
              decision ....................................................................................................10

        ii.   Later versions of the Terms and Conditions do not cure the
              unconscionability. ....................................................................................13

        iii.  FAA preemption does not save SHEIN's arbitration provision. ...............14

   C.   **Plaintiff's Class Claims Should Not be Dismissed** ..........................................14

V.      CONCLUSION ..................................................................................................15

**INTRODUCTION**

SHEIN's Motion to Compel Arbitration and Stay the Case ("Motion" or "Mot.") is nothing more than an attempt to force a consumer into a private arbitration she never knowingly agreed to enter, under a contract engineered to keep the courthouse doors open for SHEIN alone. Plaintiff Lola Russell brings this action individually and on behalf of a putative class, and SHEIN now moves to compel arbitration and stay the case. As the party seeking to compel, SHEIN bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence, and this Court must give Plaintiff the benefit of all reasonable doubts and inferences that arise. SHEIN cannot carry that burden here, for three independent reasons.

*First*, SHEIN never obtained Plaintiff's assent to its Terms and Conditions. The disclosure screens SHEIN relies upon are not clickwrap agreements but hybridwrap presentations of the kind courts in this District have repeatedly refused to enforce. On SHEIN's registration screen, the assent checkbox is indistinguishable in size, font, and placement from the optional style-preference boxes above it, and the hyperlinks to the governing terms appear in a faint, undersized typeface that is easily overlooked. On the sign-in and order-confirmation screens, the notice sits in inconspicuous fine print at the bottom of the page, spatially disconnected from the prominent buttons a user would click to continue. Several courts within the 7th Circuit have held that similar designs fail to reasonably communicate the existence of the terms, and the arbitration clause buried within them, to a reasonable user.

*Second*, even if Plaintiff had assented, the Terms are substantively unconscionable under Illinois law and therefore unenforceable under Section 2 of the Federal Arbitration Act. In the same contract that designates Plaintiff the "importer of record" and confines her tariff-refund claims to individual arbitration, SHEIN reserves for itself and its affiliates a sweeping power to

1

pursue those very claims in court and before public authorities, and even to waive relief on Plaintiff's and other consumers' behalf. Illinois courts routinely refuse to enforce arbitration provisions that reserve judicial remedies for the drafter while confining the counterparty to arbitration.

*Third*, SHEIN's request to dismiss Plaintiff's class claims fails because the class waiver cannot survive the invalidity of the agreement that contains it, because dismissal contradicts SHEIN's own delegation theory, and because a stay rather than dismissal is the only relief the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA") authorizes. For these reasons, and as set forth below, the Motion should be denied in its entirety.

## BACKGROUND

Defendant SHEIN operates one of the most popular e-commerce websites in the nation, with an emphasis on low-price clothing, accessories, and home goods. ("FAC" or "Complaint," Dkt. 7, at ¶ 19.) As part of its online registration and checkout processes, SHEIN relies on four separate screens that purportedly notify SHEIN customers of its Terms and Conditions and bind them to such terms. (Chi Declaration, Dkt. 20-1, ¶ 8.) The screens are as follows:

**"New To SHEIN" Registration Page (Chi Decl. ¶ 7).**

SHEIN's registration screen prompts the user to enter an email address, create a password, confirm the password, and select style preferences from a series of checkboxes labeled "Women," "Men," "Plus Size," "Kids," "Home," and "Pets Supplies." Below the style-preference checkboxes, and above a large black "REGISTER" button occupying nearly the full width of the screen, appears a small, additional checkbox next to the text: "I agree to the Privacy & Cookie Policy and Terms & Conditions." The assent checkbox is rendered in the same size, font, and visual weight as the style-preference checkboxes immediately above it, and it is not visually

distinguishable from those preference selections. The hyperlinks to the "Privacy & Cookie Policy" and "Terms & Conditions" are set in a light color and small typeface, are not underlined, and are dwarfed by the "REGISTER" call-to-action. Nothing on the screen indicates that the assent checkbox is a mandatory condition of registration, unlike the optional preference categories above it, or discloses that clicking "REGISTER" constitutes agreement to a binding arbitration clause and class-action waiver contained within the linked Terms.

**Sign-In / Social-Login Screen (Chi Decl. ¶ 9)**

This screen displays the "SHEIN US" logo, a promotional banner ("Get 20% Off First Order," "Free Shipping First Order," "Free Returns *Conditions Apply"), a "Mobile number or email address" input field, and a large black "CONTINUE" button. Below the "CONTINUE" button are three prominent third-party sign-in options: "Continue with Google," "Continue with Facebook," and "Continue with Apple" – each rendered as a full-width button with the third-party's brand logo. At the very bottom of the screen, beneath a country selector and separated from the "CONTINUE" and social-login buttons by additional whitespace, appears a single line of small text: "By continuing, you agree to our Privacy & Cookie Policy and Terms & Conditions." The disclosure is not adjacent to any of the four action buttons, is set in a lighter and smaller typeface than the promotional offers above it, and is positioned in the visual "footer" region of the screen – a region users are conditioned to disregard. Nothing on the screen ties the phrase "By continuing" to any specific button, or indicates that clicking "Continue with Google," "Continue with Facebook," or "Continue with Apple" is a manifestation of assent to SHEIN's Terms rather than to those of any of these third parties.

**"Order Confirmation" Screen. (Chi Decl. ¶ 10)**

The order-confirmation screen is dominated by pricing information (retail price,

3

promotions, subtotal, shipping fee, sales tax, and a prominent "Order Total"), followed by a "Payment Security" panel with credit-card logos and a "Security & Privacy" panel describing data-encryption practices. Immediately above a large black "CONTINUE" button – which also displays a green "FREE SHIPPING" badge that draws the eye – appears a single line of very small, low-contrast text: "By placing this order you agree to SHEIN's Terms and Conditions and Privacy Policy." The disclosure is not set off by whitespace, is not bolded, and is smaller than nearly every other text element on the screen, including the shipping fee, tax line, and rewards-points indicator. The "Terms and Conditions" and "Privacy Policy" hyperlinks are light-blue and the same small size as the surrounding text. Nothing signals that clicking "CONTINUE" – a button whose ordinary and reasonable meaning is to complete the purchase – also constitutes assent to an arbitration agreement or any modification of previously accepted terms.

**"Update Of Terms & Conditions And Policy (sic) & Cookie Policy" Screen (Chi Decl. ¶ 12)**

This screen depicts a pop-up image superimposed over a "My Profile" page. The screen states: "Update Of Terms & Conditions And Policy (sic) & Cookie Policy" and, in smaller text, "In order to provide better service, please read and accept," followed by hyperlinks to the "Privacy & Cookie Policy" and "Terms & Conditions." The screen offers two buttons: a black "ACCEPT" button and, below it, a "REJECT AND B..." button whose label is truncated and does not disclose its full function. Nothing on the screen identifies what has been updated, whether the user's continued access to their existing account is conditioned on accepting, or what happens if the user selects the truncated "REJECT AND B..." option. The screen does not disclose that selecting "ACCEPT" results in anything other than a promise to "provide better service."

4

## LEGAL STANDARD

Whether an arbitration agreement is valid and should be applied is "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986); *see also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626 (1985). Courts should generally "apply ordinary state-law principles that govern the formation of contracts" (*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)) to determine whether the parties agreed to arbitration as the Federal Arbitration Act "places arbitration agreements on equal footing with other contracts[.]" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). As the party seeking to compel arbitration, Defendant "bear[s] the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence[.]" *Mohammed v. Uber Techs., Inc.*, No. 16-cv-2537, 2018 WL 1184733, at \*5 (N.D. Ill. Mar. 7, 2018). Thus, "a district court considering . . . an agreement to arbitrate should give to the party denying the agreement the benefit of all reasonable doubts and inferences that may arise." *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 Fed. Appx. 782, 785–86 (11th Cir. 2008).

## ARGUMENT

A.    **Defendants' Motion To Compel Arbitration Should Be Denied Because Its Disclosure Screens Fail To Give Adequate Notice Of Its Terms and Conditions And The Forced Arbitration Provision Buried Therein.**

Defendant's Motion to Compel Arbitration should be denied because Defendant's Terms of Use presentation screens do not provide disclosures sufficient for Plaintiff to have assented to Defendant's Terms of Use.

Courts often group online agreements into one of two categories: "clickwrap" agreements, as detailed above, and "browsewrap" agreements, "where a website's terms and conditions of use

5

are generally posted on the website via a hyperlink at the bottom of the screen." *Anand v. Heath*, No. 19-cv-00016, 2019 WL 2716213, at *3 (N.D. Ill. June 28, 2019) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014)). As an initial matter, clickwrap agreements – where a digital device user clicks a separate button or checkbox which accompanies a disclosure that by doing so they are assenting to a set of terms – are generally enforced. *See Sgouros v. TransUnion Corp.*, No. 14-c-1850, 2015 WL 507584, at *4 (N.D. Ill. Feb. 5, 2015). However, "[m]any online contracts do not fit neatly into the clickwrap or browsewrap categories but instead share characteristics with both." *Wilson v. Redbox Automated Retail, LLC*, 448 F.Supp.3d 873, 883 (N.D. Ill. 2020) (citing *Anand*, 2019 WL 2716213, at *3). In *Redbox*, the court analyzed whether the agreements presented to customers via its website and kiosks were clickwrap or hybridwrap agreements. In making its distinction between clickwrap and hybrid, the court stated that "[u]nlike with a clickwrap agreement, for which a customer must expressly agree to the terms and conditions, the affirmative assent in the hybrid agreements here serves an additional, more prominent purpose." *Redbox*, 448 F.Supp.3d at 883. By way of example the court explained that "Customers renting a movie from a Redbox kiosk hit 'Pay Now' to complete the rental. Customers using Redbox's website click 'Sign In' to access their Redbox account. Assent to the Terms of Use is coupled with both acts but it is not the primary purpose of either act." *Id*.

Similarly, in *Anand*, Judge Tharp analyzed a configuration of an agreement which displayed a hyperlink to the defendant's terms and conditions above a "Continue" button. *Anand*, 2019 WL 2716213, at *1. The court stated that the "configuration presents what can best be described as a hybridwrap agreement because the terms and conditions were hyperlinked rather than displayed to the user in full, and the user's ability to continue through the site was not conditioned on her express assent to the terms and conditions." *Anand*, 2019 WL 2716213, at *4.

6

In *Tubi*, the court again refused to compel arbitration upon finding that the defendant's hybridwrap agreement failed to reasonably communicate the existence of its terms to the plaintiff. *Campos v. Tubi, Inc.*, 716 F. Supp. 3d 623, 632 (N.D. Ill. 2024), *appeal dismissed,* No. 24-1368, 2024 WL 5457089 (7th Cir. Oct. 16, 2024) ("[t]he Prompt is in the smallest font on the screen, and it is very nearly at the bottom. The relevant text of the Prompt, 'By registering, you agree to Tubi TV's,' is in a gray font that contrasts poorly with the background.")

Here, like in *Tubi*, *Redbox* and *Anand*, Plaintiff was presented with a hybridwrap agreement on the SHEIN website's "Sign-In / Social-Login" and "Order Confirmation," Screens. Plaintiff, like Defendant's other customers, presumably would have clicked one of the prominent "Continue" buttons – though Defendant does not specify which – to allow her to access Defendant's shopping app. (Chi Decl. at ¶¶ 9, 10.) The Terms of Use that include the arbitration agreement Defendant is attempting to enforce were located at the very bottom of the page that Plaintiff was presented, in inconspicuous fine print not much darker than the background when compared with every other element of the sign-in page, and simply stated that "By continuing, you agree to our Privacy & Cookie Policy and Terms & Conditions." (*Id.*) Thus, Plaintiff was presented with a hyperlink to Terms of Use that was spatially disconnected from any of the buttons she would have clicked to continue. Critically, at that point her "ability to continue through the site was not conditioned on her express assent to the terms and conditions" (*Anand*, 2019 WL 2716213, at *4), and just like in *Redbox* her "affirmative assent" . . . served an additional, more prominent purpose"—to sign in to her account. 448 F.Supp.3d at 883.

Defendants rely on *Miracle-Pond v. Shutterfly, Inc.*, No. 19-cv-04722, 2020 WL 2513099 (N.D. Ill. May 15, 2020), and *Domer v. Menard, Inc.*, 116 F.4th 686 (7th Cir. 2024), in an attempt to convince this Court that its disclosure of the Terms & Conditions was sufficiently "clear and

conspicuous" "because a reasonable user who completes that process would understand that she was manifesting assent." However, in *Miracle-Pond* the terms were hyperlinked *above* buttons labeled "Decline" and "Accept," and together with the "View Terms of Use" and "View Privacy Policy" buttons were the only buttons on the page. *Miracle-Pond v. Shutterfly, Inc.*, No. 19 CV 04722, 2020 WL 2513099, at *1 (N.D. Ill. May 15, 2020). The court held that acceptance was valid when the interface (1) presented the terms of use, (2) informed the user that clicking "Accept" specifically constitutes acceptance of the terms of use, and (3) provided *both* an "Accept" and "Decline" button, because "a reasonable user . . . would understand that she was manifesting assent to the terms." *Id.* (internal citation omitted). Here, unlike in *Miracle-Pond*, the relevant language about Defendant's Terms of Use in the hybridwrap agreements was at the bottom of the page, did not clearly convey its connection to the call-to-action button that Plaintiff interacted with, and was not presented with an option to "decline." (Chi Decl. at ¶¶ 9, 10.) In *Domer*, the Court likewise found sufficient a link to terms that was preceded by a note that "began with bold font and used the same size and style font as the surrounding text." *Domer*, 116 F.4th at 692. Here, unlike in *Domer*, the font that presents the hyperlinked Terms of Use is <u>not</u> bolded and is *smaller* than most of the other font on the screen, especially when compared with the all-caps "CONTINUE" button and the bolded "Continue with Google," "Continue with Facebook," and "Continue with Apple" buttons. (Chi Decl. at ¶ 9.)

        i.      <u>Defendant fails to establish that Plaintiff assented to its Term of Use when creating her SHEIN account.</u>

Courts typically will give effect to terms "where the button required to perform the action manifesting assent . . . is located directly next to a hyperlink to the terms and a notice informing the user that, by clicking the button, the user is agreeing to those terms." *Anand*, 2019 WL 2716213, at *4; *see also Redbox*, 448 F.Supp.3d 883 (quoting *Gorny v. Wayfair Inc.*, No. 18-cv-

8

8259, 2019 WL 2409595, at *5 (N.D. Ill. June 7, 2019)) (this [c]ourt must consider "both the law and the facts to see if a reasonable person in the plaintiff's shoes would have realized that [s]he was assenting to a contract"); *see also Redbox*, 448 F.Supp.3d at 883 (quoting *Applebaum v. Lyft, Inc.*, 263 F.Supp.3d 454, 466 (S.D. NY 2017)) ("The presentation of the online agreement matters: Whether there was notice of the existence of additional contract terms presented on a webpage depends heavily on whether the design and content of that webpage rendered the existence of the terms reasonably conspicuous").

Here, Defendant buried its arbitration clause in plain sight. The "New To SHEIN" screen presents a row of checkboxes – "Women," "Men," "Plus Size," "Kids," "Home," and "Pets Supplies"—that invite the user to select optional style preferences. Tucked directly beneath that row, and just above an oversized black "REGISTER" button spanning nearly the full width of the screen, sits one more small checkbox, beside the text: "I agree to the Privacy & Cookie Policy and Terms & Conditions." Nothing sets this checkbox apart. It is identical in size, font, and visual weight to the optional preference boxes above it, and a user has no way to tell that this one – unlike "Women" or "Pets Supplies" – is a mandatory condition of registration rather than another discretionary choice. The hyperlinks fare no better: the "Privacy & Cookie Policy" and "Terms & Conditions" appear in a faint, undersized typeface, not underlined and easily overlooked. And nowhere does the screen warn the user that clicking "REGISTER" surrenders the right to sue in court, binding them to an arbitration clause and class-action waiver hidden within the linked Terms.

Defendants' "Update Of Terms & Conditions And Policy (sic) & Cookie Policy" Screen likewise fails. The heading itself is garbled – Update Of Terms & Conditions And Policy (sic) & Cookie Policy – and the smaller text beneath it offers no clarity, stating only: "In order to provide

9

better service, please read and accept," followed by hyperlinks to the "Privacy & Cookie Policy" and "Terms & Conditions." The user is given two choices: a black "ACCEPT" button and, below it, a "REJECT AND B..." button whose label is cut off mid-word, concealing what rejection actually entails. The screen never says what was updated, whether continued access to the user's existing account hinges on accepting, or what consequences follow from selecting the truncated "REJECT AND B..." option. Most tellingly, nothing on the screen suggests that clicking "ACCEPT" does anything more than secure the promised "better service" – least of all that it binds the user to new contractual terms. As such Defendant's Motion to Compel Arbitration should be denied.

    **B.**     **The Tariff Disputes That SHEIN Attempts To Send To Arbitration Are Not Arbitrable.**

SHEIN's Motion to Compel should also be denied because the Arbitration Provision and Customs Provision combine to make the Terms and Conditions substantively unconscionable under Illinois law. In the same contract in which SHEIN designates Plaintiff the "importer of record" responsible for compliance with all customs "laws and regulations," SHEIN reserves for itself and its affiliates a broad "power of attorney" to litigate tariff-related disputes – including in judicial forums – while simultaneously forcing Plaintiff into individual arbitration to pursue the very same tariff-refund claims. (Chi. Decl. Ex. D §§ 2.5, 12.2; Ex. A §§ 2.6, 13.1; Ex. E §§ 2.5, 12.2; Ex. F §§ 2.6, 13.2.) That architecture is one-sided in the extreme, and impermissible under Illinois law.

    i.     <u>Illinois substantive-unconscionability doctrine supplies the rule of decision.</u>

The Federal Arbitration Act does not compel arbitration where "grounds . . . exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Generally applicable state-law contract defenses – including unconscionability – remain available to defeat an arbitration

10

agreement. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 779–81 (7th Cir. 2014) (applying Illinois unconscionability doctrine to invalidate arbitration provision that "allowed [defendants] to manipulate what purported to be a fair arbitration process by selecting an arbitrator and proceeding according to nonexistent rules."). Under Illinois law, an arbitration agreement is substantively unconscionable when its terms are "so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 28 (2006) *quoting Maxwell v. Fid. Fin. Servs., Inc.*, 184 Ariz. 82, 89 (1995). Illinois courts routinely refuse to enforce arbitration provisions that reserve judicial remedies for the drafter while confining the counterparty to arbitration. *See Hwang v. Pathway LaGrange, LLC*, 2024 IL App (1st) 240534, ¶ 18 (arbitration provision unenforceable where drafter's likely claims were carved out of arbitration and counterparty's likely claims were confined to it); *Bain v. Airoom, LLC*, 2022 IL App (1st) 211001, ¶¶ 42-50 (same); *Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill. App. 3d 20, 27-28 (1st Dist. 2005) (arbitration agreement lacked mutual obligations and was thus unenforceable where drafter retained access to courts for its typical claims).

Here, the 2021 Terms – which governed when Plaintiff first opened her accounts (Chi. Decl. Ex. D §§ 2.5, 12.2) – establish a two-forum dispute-resolution system that reserves the courts for SHEIN and confines the consumer to arbitration. Section 2.5 designates Plaintiff the "importer of record" and makes her "responsible for complying with all laws and regulations" governing importation, including U.S. customs and tariff law. (Chi. Decl. Ex. D § 2.5.) In the same section, SHEIN extracts from Plaintiff a "power of attorney" authorizing "[SHEIN] and its affiliates to make statements, submit, amend, and invalidate all declarations and documents necessary or useful

11

to import goods ordered by [her] in [her] name and for [her] account." (*Id.*) That grant is sweeping, as it includes the power to:

> "request refunds of any levies, taxes and fees relating to the importation of goods, to conduct administrative appeal and court proceedings as well as enforcement proceedings and appeals and remedies at all instances, file applications, complaints, etc. with public authorities, courts and other institutions, file, withdraw and/or waive legal remedies and appeals against judgments, orders, arbitral awards, payment orders, or any other orders and decisions of whatever kind, [and] receive monies, valuables and documents and/or deeds . . . ."

(*Id.*) These terms present significant asymmetry between the Parties, particularly where Section 12.2 confines the consumer's *own* claims – including her claim in this litigation to recover unlawfully collected tariffs passed through in SHEIN's pricing – to individual JAMS arbitration. (*Id*. § 12.2.) Under Section 2.5, SHEIN exclusively reserves for itself judicial and administrative forums in the form of "court proceedings," "administrative appeal," and "public authorities" to pursue tariff refunds from the U.S. Government. Indeed, those judicial forums are the only forums in which tariff-refund claims against the United States can be litigated. *See* 28 U.S.C. § 1581(i)(1)(B) (conferring exclusive jurisdiction on the Court of International Trade over civil actions against the United States arising out of laws "providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise"). Under SHEIN's Terms and Conditions, SHEIN preserves for itself the right to litigate in court, while the consumer's identical tariff-related claims are funneled into individual arbitration.

Further compounding the imbalance created by the Terms and Conditions, Section 2.5 also reserves for SHEIN the unilateral power to "withdraw and/or waive legal remedies and appeals against judgments, orders, [and] arbitral awards" including, on its face, any award Plaintiff might obtain in the arbitration SHEIN seeks to compel. (Chi. Decl. Ex. D § 2.5.) The result is a dispute-

12

resolution system in which SHEIN controls the forum, controls the refund claims, and reserves the power to waive relief on Plaintiff's behalf.

This is precisely the "overall imbalance in the obligations and rights imposed by the bargain" that Illinois courts repeatedly refuse to enforce. *See, e.g., Kinkel*, 223 Ill. 2d 1 at 28; *Hwang v. Pathway LaGrange, LLC*, 2024 IL App (1st) 240534; *Bain v. Airoom, LLC*, 2022 IL App (1st) 211001. It is materially worse than the one-sidedness that defeated arbitration in *Hwang*, *Bain*, and *Vassilkovska*, because SHEIN does not merely carve out its own likely claims, but reserves the aggregated-claims mechanism for itself, asserting tariff-refund authority across its entire customer base in a single judicial or administrative proceeding, while confining each customer to individual arbitration. *Cf. Jackson*, 764 F.3d at 778–79 (arbitration provision unconscionable where mechanism was "a sham and an illusion"). In short, SHEIN has granted itself "classwide" relief in courts, while limiting consumers to individual-only claims in arbitration. This is unfair, legally unconscionable, and unenforceable.

ii.     <u>Later versions of the Terms and Conditions do not cure the unconscionability</u>.

SHEIN cannot escape this unconscionability analysis by pointing to later versions of its Terms. Although the Exhibit A, E, and F versions of the customs provision remove the label "power of attorney," they retain SHEIN's substantive authority to "request refunds of levies, taxes and fees related to the importation of goods" and to "file, withdraw and/or waive legal remedies and appeals against judgments, orders, arbitral awards, payment orders, or any other orders or decisions of whatever kind." (Chi. Decl. Exs. A § 2.6, E § 2.5, F § 2.6.) Nowhere in the later versions does SHEIN inform its customers that it has relinquished the agency authority it previously granted itself, nor that it has relieved them of "importer" status. The one-sided

13

architecture persists. Moreover, because every operative version contains the same one-sided architecture, the Court need not resolve the version question to deny the Motion to Compel.

   iii.   FAA preemption does not save SHEIN's arbitration provision.

SHEIN cannot invoke FAA preemption to insulate itself from a finding that its arbitration provision is unenforceable. The FAA preempts only state-law rules that "single[] out arbitration agreements for disfavored treatment." *Kindred Nursing*, 581 U.S. at 251. Illinois substantive-unconscionability doctrine is a "generally applicable contract defense[]" that applies to all Illinois contracts, arbitration and otherwise, and is expressly preserved by § 2's savings clause. *Casarotto*, 517 U.S. at 687. The Seventh Circuit applied precisely this doctrine to invalidate an arbitration provision on Illinois unconscionability grounds in *Jackson*, 764 F.3d at 779–81.

## C.   PLAINTIFF'S CLASS CLAIMS SHOULD NOT BE DISMISSED

SHEIN's request to dismiss Plaintiff's class claims fails for three independent reasons. *First*, the class waiver rises and falls with the arbitration agreement itself. Every authority SHEIN cites – *Stolt-Nielsen*, *Concepcion*, *Italian Colors*, and *Imburgia* – presupposes a validly formed, enforceable agreement to arbitrate. *See Stolt-Nielsen*, 559 U.S. at 681; *Concepcion*, 563 U.S. at 339; *Italian Colors*, 570 U.S. at 233; *Imburgia*, 577 U.S. at 49.

Indeed, SHEIN's lead authority confirms that arbitration "is a matter of consent." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010). As set forth above, Plaintiff never assented to the Terms, and even if she had, the agreement is substantively unconscionable. *See supra* §§ IV.A and IV.B. SHEIN's preemption cases do not save the waiver: *Concepcion* and *Imburgia* hold only that the FAA preempts state rules that single out arbitration or disfavor class waivers as such. *Concepcion*, 563 U.S. at 341–44; *Imburgia*, 577 U.S. at 58–59. Plaintiff invokes no such rule. She relies on generally applicable contract defenses – formation and

14

unconscionability – which § 2's saving clause expressly preserves. *See* 9 U.S.C. § 2; *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (saving clause preserves "generally applicable contract defenses, such as fraud, duress, or unconscionability"). A class waiver embedded in an agreement that was never formed, or that is unenforceable, provides no basis to dismiss anything.

*Second*, SHEIN's request contradicts its own delegation theory. SHEIN insists this Court may not decide "any dispute regarding arbitrability" because all threshold issues were purportedly delegated to the arbitrator. Mot. at 12-13. Yet it simultaneously asks this Court to construe the Terms, adjudicate the scope and effect of the class-waiver provisions, and dismiss claims on that basis. *Id.* at 14-15. SHEIN cannot have it both ways: if the Court credits the delegation argument, the waiver's application belongs to the arbitrator in the first instance.

*Third*, dismissal is not available relief in any event. SHEIN's own authority holds that when a court compels arbitration and a party requests a stay, § 3 of the FAA "compels the court to issue a stay" – not to dismiss any claim. *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024). Whether Plaintiff may represent a class is a question committed to Rule 23 and resolved at certification; courts in this District routinely decline to strike or dismiss class allegations at the pleading stage as premature. *See, e,g., Ledet v. Freightbull, Inc.*, No. 24 C 10974, 2025 WL 1505406, at *4 (N.D. Ill. May 27, 2025) (explaining that waiver "is better addressed in the context of proceedings related to class certification if the case reaches that stage.").

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration and Stay the Case should be denied in its entirety.

15

DATED: July 15, 2026

Respectfully submitted,

LOLA RUSSELL, individually and on behalf of similarly situated individuals

By: /s/ *Joseph Dunklin*
One of Plaintiff's Attorneys

Myles McGuire
Evan M. Meyers
Joseph Dunklin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
jdunklin@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2026, I electronically filed the foregoing *Plaintiff's Memorandum of Law in Opposition to Defendant's Motion To Compel Arbitration and Stay the Case* with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ *Joseph Dunklin*

17