**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LOLA RUSSELL, individually and on behalf of similarly situated individuals, ) ) ) | |
| *Plaintiff*, ) ) | |
| ) | Case No. 1:26-cv-04533 |
| v. ) | |
| ) | Hon. Joan H. Lefkow |
| SHEIN DISTRIBUTION CORPORATION, a ) | |
| Delaware corporation; SHEIN US SERVICES, ) | Magistrate Judge Beth W. Jantz |
| LLC, a Delaware limited liability company; and ) | |
| SHEIN TECHNOLOGY LLC, a Delaware ) | |
| limited liability company, ) | |
| ) | |
| *Defendants*. ) | |

**PLAINTIFF'S MOTION TO REMAND OR, IN THE ALTERNATIVE,
FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

Plaintiff Lola Russell ("Plaintiff"), individually and on behalf of all similarly situated

individuals, pursuant to 28 U.S.C. §§ 1332(d)(2) and 1447(c), hereby respectfully moves for entry

of an Order remanding this case to the Circuit Court of Cook County, Illinois, or in the alternative,

granting Plaintiff leave to conduct jurisdictional discovery.

**INTRODUCTION**

This case is a putative class action brought against Shein Distribution Corporation, Shein

US Services, LLC, and Shein Technology LLC (collectively, "Shein" or "Defendants") seeking to

recover inflated prices that Defendants charged their customers to offset unlawful tariffs imposed

under the International Emergency Economic Powers Act ("IEEPA"). As alleged in Plaintiff's

Class Action Complaint (Dkt. 1-1, the "Complaint"), Defendants passed the cost of unlawful

IEEPA duties on to consumers through elevated retail prices and have established no mechanism

1

to return any corresponding tariff refunds to the consumers who bore those costs. (Compl. ¶¶ 9–10, 50–52.)

Plaintiff filed this action in the Circuit Court of Cook County, Illinois, on March 17, 2026. On April 22, 2026, Defendants removed it to this Court (Dkt. 1, the "Notice"), invoking the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (Notice at 1; Notice ¶ 10.) But Defendants have not carried their burden. Their entire amount-in-controversy showing occupies three paragraphs and consists of a single conclusory assertion: it quotes the Complaint's allegation that *Defendants* are "entitled to substantial refunds—potentially in the tens or hundreds of millions of dollars" from the government for IEEPA duties they paid as importer of record. (Compl. ¶ 50) The Notice then asserts, without more, that "as alleged, more than $5 million in tariffs imposed under IEEPA are at issue in the State Action." (Notice ¶ 22.) Defendants submit no sales figures, no pricing analysis, and no arithmetic of any kind. They do not identify a single qualifying transaction, a single duty payment, or a single dollar of tariff cost passed through to a class member.

That is not proof of the amount in controversy; it is a substitution of one number for another. What Defendants may recover from the United States on their own import entries is not what Plaintiff and the putative Class seek from Defendants. The Class is defined to reach only purchasers who "were charged prices that included IEEPA Tariff costs" (Compl. ¶ 55), a limitation the Notice quotes around and omits entirely. (*See* Notice ¶ 15.) Defendants offer nothing to bridge the gap between their aggregate refund entitlement on all imports and the aggregate overcharge actually placed in controversy by this Class.

Because Defendants have not shown by a preponderance of the evidence that the amount in controversy exceeds $5,000,000, the Court lacks subject-matter jurisdiction and must remand.

28 U.S.C. § 1447(c). In the alternative, and before any denial of remand, Plaintiff requests leave to take narrowly-tailored jurisdictional discovery directed at the amount in controversy.

## BACKGROUND

**A.      The Complaint**

Plaintiff alleges that beginning in February 2025, the federal government imposed IEEPA-based tariffs on imported goods, that the U.S. Supreme Court later held those tariffs were unauthorized, and that importers such as Defendants became entitled to refunds. (Compl. ¶¶ 3–9.) The Complaint further alleges that Defendants "passed their unlawful IEEPA tariff burdens onto Plaintiff, the Class, and Subclass Members by directly and indirectly charging Plaintiff and the Class and Subclass Members the cost of the unlawful IEEPA tariffs through elevated prices." (Compl. ¶ 10.) The Complaint pleads three claims: violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.* (on behalf of the Illinois Subclass); common law Unjust Enrichment; and common law Money Had and Received. (Compl. ¶¶ 61–96.)

The Complaint defines the Class and Illinois Subclass as follows: "All persons in the United States who purchased products from Shein during the period February 1, 2025 through February 24, 2026, and were charged prices that included IEEPA Tariff costs"; and "All persons within the State of Illinois who purchased products from Shein during the period February 1, 2025 through February 24, 2026, and were charged prices that included IEEPA Tariff costs." (Compl. ¶ 55 (emphasis added).) On numerosity, the Complaint alleges only that, "[u]pon information and belief, there are hundreds of thousands, if not millions, of proposed class members," and that qualifying purchasers "can be ascertained through records in the possession, custody, or control of Defendants." (Compl. ¶ 57.)

3

As to Defendants' own refund entitlement, the Complaint alleges, "[u]pon information and belief," that "Defendants are entitled to substantial refunds—potentially in the tens or hundreds of millions of dollars—for IEEPA tariffs it paid as the importer of record for goods sourced from China and other countries subject to IEEPA tariffs." (Compl. ¶ 50.) The Complaint further alleges that Defendants have not disclosed whether they have filed or intend to file refund claims with CBP or in the Court of International Trade, and have "not established any mechanism to refund to consumers" the amounts they collected. (Compl. ¶¶ 51–52.)

**B.      The Notice of Removal**

Defendants' CAFA amount-in-controversy showing appears at paragraphs 21 through 23 of the Notice and is unaccompanied by any evidentiary submission. Paragraph 21 recites Defendants' view of the governing standard, asserting that Defendants "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and that a removing defendant "may satisfy the amount-in-controversy requirement by relying on the allegations set forth in the complaint." (Notice ¶ 21 (citing *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. at 89; *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005); *Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir. 1993)).)

Paragraph 22 supplies the entirety of Defendants' substantive showing. It states that Plaintiff's claims "arise from tariffs imposed under the [IEEPA], which Defendants allegedly paid and passed on to 'millions' of consumers"; that Plaintiff "seeks 'a refund' of those 'tariffs paid pursuant to the Tariff Executive Orders'"; and that "Plaintiff alleges that Defendants are entitled to 'substantial refunds—potentially in the tens or hundreds of millions of dollars' for IEEPA tariffs." (Notice ¶ 22 (quoting Compl. ¶¶ 2, 7, 9, 50, 57).) From those allegations, and while "den[ying] any liability whatsoever or that Plaintiff or any putative class member suffered any

4

cognizable injury," Defendants conclude that "as alleged, more than $5 million in tariffs imposed under IEEPA are at issue in the State Action." (*Id.*) Paragraph 23 states, without elaboration, that "CAFA's amount-in-controversy requirement is satisfied." (Notice ¶ 23.)

Defendants attach no declaration, no duty-payment records, or sales data. Nor does the Notice perform any calculations as to the amount in controversy. It contains not even an approximation of the number of qualifying transactions, and the pass-through percentage applied to them. The Notice also does not quote the Class definition in full: paragraph 15 describes the putative class as "[a]ll persons in the United States" and "[a]ll persons within the State of Illinois" who purchased products from Shein "during the period February 1, 2025 through February 24, 2026," omitting the definition's controlling limitation to purchasers who "were charged prices that included IEEPA Tariff costs." (Compare Notice ¶ 15 *with* Compl. ¶ 55.)

## **LEGAL STANDARD**

"A defendant may remove a case to federal court only if the federal district court would have original subject matter jurisdiction over the action." *Disher v. Citigroup Global Markets Inc.*, 419 F.3d 649, 653 (7th Cir. 2005), *vacated on other grounds*, 548 U.S. 901 (2006) (citing 28 U.S.C. § 1441(a) and *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Here, Defendants removed this case under CAFA, which gives federal courts original jurisdiction over class actions where, *inter alia*, "the aggregate amount in controversy exceeds $5,000,000"; "any member of the plaintiff class is a citizen of a state different from any defendant ('minimal diversity')"; and "the number of members of the plaintiff class is 100 or more." *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 679 (7th Cir. 2006) (citing 28 U.S.C. §§ 1332(d)(2), (d)(5)).

The removing party bears the burden of establishing that federal subject matter jurisdiction exists and that removal was proper. *Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir.

2004); *Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017) ("As in removal in non-CAFA diversity actions, the party asserting federal jurisdiction under CAFA must establish that the requirements of § 1332(d) are satisfied."). If, in a removed case, a district court finds that it lacks subject matter jurisdiction at any time, the only remedy is remand to state court. *Smith v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 23 F.3d 1134, 1142 (7th Cir. 1994); *see* 28 U.S.C. § 1447(c).

## ARGUMENT

I. **This Case Must Be Remanded Because Defendants Have Failed To Show By A Preponderance Of The Evidence That CAFA's $5 Million Amount-In-Controversy Requirement Is Satisfied.**

Defendants' Notice of Removal is deficient on its face because it does not adduce any evidence to meet CAFA's $5 million amount-in-controversy requirement. Although CAFA expands federal jurisdiction over certain class actions, it "does not alter the burden of establishing the district court's jurisdiction. . . . [T]he party asserting federal jurisdiction under CAFA must establish that the requirements of § 1332(d) are satisfied." *Roppo*, 869 F.3d at 578.[1]

Although a "defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court," if the amount in controversy is questioned, then the defendant must show, "by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Roppo*, 869 F.3d at 579 (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014), and citing 28 U.S.C. § 1446(c)(2)(B)) (internal quotation marks omitted). In *Dart Cherokee*, the Supreme Court explained that Section 1446(c)(2)(B) "clarifies the procedure in order when a defendant's assertion of the amount in

---

[1] Similarly, "[t]he proponent of jurisdiction bears the risk of nonpersuasion on the contested factual assertions that are pertinent to the jurisdictional issue." *Hart*, 457 F.3d at 682; *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536 (7th Cir. 2006).

controversy is challenged. . . . 'Discovery may be taken with regard to that question. In case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies.'" 574 U.S. at 89 (emphasis added) (quoting H.R. Rep. No. 112-10, p. 16 (2011)).

Here, Defendants are the removing parties and the proponents of federal jurisdiction, and therefore they must bear the burden of showing that federal jurisdiction exists under CAFA. But their Notice of Removal does not prove by a preponderance of the evidence that the amount in controversy exceeds $5 million. Defendants have not presented any evidence whatsoever as to the amount in controversy. Instead, they rest on a single allegation about *their own* refund entitlement from the federal government and ask the Court to treat it as a measure of what this Class seeks from them. This calculus fails for several reasons.

**First**, the Notice asserts that Defendants "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." (Notice ¶ 21 (quoting *Dart Cherokee*, 574 U.S. at 89).) That is the standard at the pleading stage of removal, *before* the allegation is contested. *Dart Cherokee* holds that a defendant's amount-in-controversy allegation "should be accepted when not contested by the plaintiff or questioned by the court," but that "[e]vidence establishing the amount is required . . . when the plaintiff contests, or the court questions, the defendant's allegation." 574 U.S. at 87, 89. By this motion, Plaintiff contests that amount. The preponderance-of-the-evidence standard therefore governs, and Defendants must now come forward with "findings of jurisdictional fact" supported by proof rather than allegation. *Id.* at 89; *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006) ("a proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence").

**Second**, and most fundamentally, Defendants' sole quantitative input measures the wrong thing. "[P]art of the removing party's burden is to show not only what the stakes of the litigation *could* be, but also what they *are* given the plaintiff's actual demands." *Brill*, 427 F.3d at 449 (emphases in original). Defendants have shown neither. The Notice's only number is drawn from Complaint paragraph 50, which alleges upon information and belief that *Defendants* are entitled to substantial refunds—potentially in the tens or hundreds of millions of dollars—for IEEPA tariffs *paid as the importer of record* for goods sourced from China and other countries subject to IEEPA tariffs. (Compl. ¶ 50; *see* Notice ¶ 22.) That allegation describes a potential recovery running from the United States Treasury to Defendants on Defendants' own import entries. It says nothing about the aggregate amount that Plaintiff and the putative Class seek from Defendants. The two figures are not interchangeable, and the gap between them is not marginal. Duties paid at import are assessed on customs value across *all* of an importer's entries, whether or not the imported goods were ever sold, whether or not they were sold during the Class Period, whether or not they were sold to United States consumers, and whether or not any portion of the duty was passed through in the retail price. The Class, by contrast, reaches only purchasers who "were charged prices that included IEEPA Tariff costs" during a thirteen-month window. (Compl. ¶ 55.) Defendants offer no evidence that these two universes overlap in any particular amount.

**Third**, Defendants' class-size premise ignores the Class definition's controlling limitation. The Notice relies on the Complaint's allegation that there are "hundreds of thousands, if not millions, of proposed class members" (Compl. ¶ 57; Notice ¶¶ 16, 22), but it never confronts what makes a purchaser a class member. The Class is not "all persons who bought something from Shein" during the Class Period; it is limited to persons who "were charged prices that included IEEPA Tariff costs." (Compl. ¶ 55.) The Notice quotes the surrounding language of the definition

while omitting that clause entirely. (Notice ¶ 15.) Purchases of goods on which no IEEPA duty was paid, or on which no duty cost was reflected in the price charged, fall outside the Class. Defendants—who alone possess the import, duty, pricing, and transaction records that would answer the question (*see* Compl. ¶ 57)—offer no evidence bridging the gap between total Shein purchasers and qualifying Class purchases, and the burden to do so is theirs. *Meridian*, 441 F.3d at 543.

**Fourth**, Defendants submit no evidence at all in support of their purported amount in controversy. A removing defendant may support its amount-in-controversy estimate with an employee affidavit or comparable proof. *Schutte v. Ciox Health, LLC*, 28 F.4th 850, 854 (7th Cir. 2022). Defendants have submitted none. Notably, Defendants do not even attempt the arithmetic. There is no per-unit figure, no multiplier, no pass-through rate, and no aggregate calculation anywhere in the Notice—only the assertion that "as alleged, more than $5 million in tariffs imposed under IEEPA are at issue." (Notice ¶ 22.) A conclusion restated is not a calculation performed. *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 733 (7th Cir. 2021) (finding a "speculative" inference of the amount in controversy inadequate).

**Fifth**, Defendants' own denials confirm the absence of proof. In the same paragraph in which Defendants monetize the alleged tariff pass-through, they "den[y] any liability whatsoever or that Plaintiff or any putative class member suffered any cognizable injury in connection with Plaintiff's claims." (Notice ¶ 22.) Defendants of course need not concede liability to establish removal jurisdiction. But the denial underscores that Defendants have put forward no factual basis from records that are uniquely in their possession for the proposition that any specific quantum of IEEPA duty was charged to any Class member. Their position reduces to the contention that because Plaintiff has alleged a large number somewhere in the Complaint, the jurisdictional

threshold is met. The Seventh Circuit has rejected that approach. *Dancel v. Groupon, Inc.*, 940 F.3d 381, 385 (7th Cir. 2019) (removing defendant improperly "rested on [] speculation" and "provid[ed] nothing but a guess of diversity, educated and sensible though it may be").

In sum, Defendants take a single allegation about the refunds *they* may recover from the government, strip it of every limitation the Class definition imposes, supply no evidence and not even the most basic arithmetic, and declare the jurisdictional threshold satisfied. That does not establish a plausible, evidence-supported estimate that more than $5 million is in controversy. Defendants' guess as to the amount in controversy, "educated and sensible though it may be," does not satisfy their burden of proof or their burden of persuasion. *Dancel*, 940 F.3d at 385. Where a district court lacks subject matter jurisdiction over a removed claim, the only authorized result is remand to the originating state court. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.") Accordingly, Defendants' Notice of Removal is deficient, and the Court should order that this case be remanded.

## II.    If The Court Determines Remand May Not Be Appropriate, It Should Grant Plaintiff Leave To Conduct Jurisdictional Discovery.

In the alternative, and to the extent that the Court requires further evidence regarding the amount in controversy, it is commonplace in courts within the Seventh Circuit to permit expedited jurisdictional discovery on this issue. *See, e.g.*, *McInnis v. SureStaff, LLC*, No. 21-cv-0309, 2021 WL 4034072, at *2 (N.D. Ill. Sept. 3, 2021) (permitting jurisdictional discovery regarding the citizenship of the putative class members); *Young v. Integrity Healthcare Communities, LLC*, 513 F. Supp. 3d 1043, 1053 (S.D. Ill. 2021) (same); *Musgrave v. Aluminum Co. of Am.*, No. 3:06-CV-0029-RLY-WGH, 2006 WL 1994840, at *3 (S.D. Ind. July 14, 2006) (granting jurisdictional

discovery regarding proposed class members' citizenship to probe whether the local controversy exception to CAFA applies).

Here, jurisdictional discovery is especially appropriate because the information needed to test the amount in controversy is uniquely within Defendants' control, as the Complaint alleges and as the Notice's silence confirms. (Compl. ¶¶ 50–52, 57.) Plaintiff's proposed discovery would be limited to records necessary to evaluate the jurisdictional amount, including, but not necessarily limited to: (i) the products Defendants imported into the United States during the Class Period and their countries of origin and import dates; (ii) IEEPA duty and payment records for those imports; (iii) qualifying sales during the proposed Class Period; (iv) tariff-related retail price changes or pass-through data for the imported products; and (v) refund or reliquidation amounts Defendants received or claimed on IEEPA duties. This request seeks only what is necessary to decide the jurisdictional question and is appropriate alternative relief should the Court decline to remand outright. *Dancel*, 940 F.3d at n.1 ("where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978)). Plaintiff thus requests that the Court, in the alternative to ordering remand, grant Plaintiff leave to take jurisdictional discovery regarding the amount in controversy.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order: (i) granting her Motion to Remand; (ii) remanding this matter to the Circuit Court of Cook County, Illinois, or in the alternative, granting leave to take jurisdictional discovery related to CAFA jurisdiction; and (iii) granting such further and additional relief as this Court deems reasonable and just.

Dated: July 31, 2026

Respectfully submitted,

LOLA RUSSELL, individually and on behalf of similarly situated individuals

By: /s/ Joseph Dunklin
One of Plaintiff's Attorneys

Myles McGuire
Evan M. Meyers
Joseph Dunklin
McGuire Law, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
jdunklin@mcgpc.com

*Attorneys for Plaintiff and the putative Class*

12

## CERTIFICATE OF SERVICE

I hereby certify that, on July 31, 2026, I caused the foregoing *Plaintiff's Motion to Remand or, in the Alternative, for Leave to Conduct Jurisdictional Discovery* to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ Joseph Dunklin